**ELLIS M. JOHNSTON III**
California State Bar No. 223664
CLARKE JOHNSTON THORP & RICE PC
302 Washington Street, Suite 626
San Diego, CA 92103
Phone: (619) 756-7632
Fax: (619) 684-3569
E-Mail: trip@cjtrlaw.com

**DOMENIC J. LOMBARDO**
California State Bar No. 157529
401 West A. Street, Ste. 1150
San Diego, CA 92101
Phone: (619) 232-5122
Fax: (619) 232-5144
E-mail: djl@attorneylombardo.com

Attorneys for Mr. White

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> ANDREW KYLE WHITE, <br><br> Defendant. | Case No.: 25cr571-ODW <br><br> DEFENDANT'S SENTENCING MEMORANDUM <br><br> DATE: SEPTEMBER 15, 2025 <br> TIME: 11:30 AM |

Andrew White is an intelligent young man who is passionate about everything having to do with the coastal and offshore fisheries he has grown up loving. This passion has led him to innovate fishing technology from harpoons and radio equipment to ariel fish spotting. It also led Mr. White to the conduct resulting in this felony conviction. He has accepted responsibility for his actions and acknowledges how misguided they were. Because no matter how passionate he is about these things, he is most passionate about reuniting with his wife and 6-year-old child, Andy. Nearly four months' custody away from them is sufficient punishment in this case.

# THE PERSON BEFORE THE COURT

## A. Background

Drew White is a 37-year-old United States citizen born and raised in San Diego who has never been convicted of a crime prior to this offense. He is a bright young man who graduated from Kearny Mesa Construction Tech High School, a magnet school focused on engineering innovation and design. He thrived there, learning skills that have led him to design and create many innovations in the commercial fishing community that fish the Southern California coastal waters.

Mr. White's teachers mentored him in metal works and welding while in school. He was naturally talented and intellectually curious. He also grew up in a family steeped in the local commercial fishing community and industry. With this background and before even graduating from high school, Mr. White began successfully designing and building custom fishing equipment for the commercial fishing industry, including harpoons and metal framework for fishing vessels in the fleet, such as crow's nests, communications masts, and bow pulpits that were unique and highly sought out by boat crews and their captains.

On the docks and offshore, Mr. White studied the industry and identified problems and inefficiencies. He then would go home to his shop, study these problems further and engineer solutions.  Mr. White made himself proficient in computer aided drawing (C.A.D.) to help fabricate solutions, which he then produced himself in his own workshop. When boat captains complained about limitations with their offshore radios and communications, Mr. White devised solutions, taught himself the ins and outs of radio technology and then provided captains with new radios and antennas that were available nowhere else and much more effective. Most of the San Diego commercial fishing fleet now use his radios or antennas today. Also, Mr. White estimates that over 80 percent of the swordfish caught by the fleet were harvested using equipment designed and produced by Mr. White himself. Never deterred by the difficulties of a problem, Mr. White has learned how to repair, install and improve everything from ship refrigeration to autopilot systems and other ship electronics.

This same curiosity and passion that drove Mr. White to innovate the fishing industry from the docks and his workshop led him to get his pilot's license and literally get a bird's eye view of the fisheries that were the fleet's lifeblood. Flying his own customized plane, a single-engine Glastar, as a fish spotter, Mr. White worked fisheries both north and south of the border for the last six years. But during that time, he saw many things that disturbed him, problems with the fisheries and struggles that the fleet had with these changing and deteriorating conditions.

From up high, Mr. White saw fisheries being depleted, entire species disappearing from their normal habitats. He saw more regulations being placed on the U.S. fleets, while international fishermen operated with either no restrictions or impunity from violating those that did apply to them, further endangering the stock. On top of that, Mr. White experienced and witnessed the violence of the drug cartels who operated in the same coastal areas where the fleets fished. He saw decapitated heads and other acts of violence that traumatized him and left him even more frustrated by what was happening around him.

For a young man who had always been able to study a problem, innovate a solution and produce it, Mr. White agonized over an ever-complicating mess around him and the things he cherished that could not be solved by one person alone. His frustration and search for solutions led him far astray.

### B.     The Offense

There's no dispute that Mr. White had worked incredibly hard prior to this offense, but the commercial fleet's economic circumstances had been strained and thus Mr. White's too. It strained his mental health as well, as Mr. White racked his brain to engineer solutions to such large problems. He often found some release from these pressures by flying his plane and working on new fish-finding technology. One of Mr. White's favorite places to fly was around the rich fishing grounds that surrounded San Clemente Island, an island owned and operated by the United States Navy.

In October 2023, Mr. White's curiosity got the most of him, and he landed his plane on a small airstrip on the island. He was apprehended, and while compliant with the officers, Mr. White was ordered not to return to the island without permission. He did not until a year and a half later, when on April 6, 2025, Mr. White landed his plane on the same airstrip. He then walked to a high point of the island, Mt. Thrist, where he found a government-owned F-150 pickup truck unlocked with the keys in the cab. He drove off in the truck without permission and came to a gate that he removed with the truck before driving down an unimproved road and getting stuck in a mud rut. Mr. White continued walking down the road, spent the night on a beach, and when he was approached by authorities the next morning, he told them that he had come to the island to "get away from the noise." He also apologized about taking the truck, saying "sorry about the vehicle."

Beyond some small pocket knives, the arresting officers found no dangerous weapons or other items on Mr. White's person, small backpack or plane suggesting any sort of nefarious motive on his part to disrupt base activities or otherwise seriously damage operations there. Indeed, after being transferred to Naval Base Coronado, Mr. White was released on his own recognizance the same day as his arrest.

**C. Family support, health and future plans.**

Mr. White has been in pretrial custody for a total of 118 days, nearly four months. He has spent this custodial time in three different detention facilities in three different counties (San Diego, San Bernardino and Orange counties). Each time he has been moved, Mr. White has patiently figured out the new system for establishing family contact and anxiously awaited the opportunity to speak with his wife and six-year-old son, Andy. They mean the world to him, and Mr. White has never been so far apart from them for so long. He counts every day he is not with his family.

Mr. White has the strong support of his wife, Michelle, who he met in 2012 and married eight years ago. She is very supportive of Mr. White, describing her husband foremost as "a family man" who is "everything I could have asked for in the future

father of my child and my life partner." See Exhibit A (letter in support from wife, Michelle White). Michelle also sees Mr. White as good neighbor and community member who is always willing to lend a helping hand and mentor young fisherman. *Id.* And perhaps most importantly, Ms. White understands that however good intentioned her husband's passions may be, Ms. White is committed to helping him focus that drive on productive activity that will keep him by her side and in their home. *Id.* And so is Mr. White's larger family who all are aware of his situation yet remain fully supportive. *See, e.g.* Exhibit B (letter in support from sister, Danica Walker).

Of course, it is Mr. White who's ultimately responsible for focusing his energies on productive activities, and there may be no greater impetus for this than Mr. White's six-and-a-half-year-old son, Andy, who started first grade this year. Up until his recent detention, Mr. White has been very active in his son's life. As his wife attests, Mr. White has been a "loving, present, encouraging role model and hands-on father" to his son. *See* Ex. A. For example, when other kids Andy's age might be busy playing with Legos, Mr. White has been teaching his child how to use power tools, HAM radios, and build actual working objects. *See id.* And Mr. White has done these activities with his child to teach him resilience and how to be practically minded. *Id.*

Mr. White doesn't want to be separated from his son again. It still pains him to recall when he was taken into custody at the end of his son's first little league season; Mr. White had been a coach on the team and ended up missing the final game and year-end activities. Even beyond the embarrassment of having the other parents learn why he was absent, it was most hurtful that he couldn't be there for his son. Mr. White is committed to not putting himself in such a situation again.

And there is plenty for Mr. White to focus on now. Fisheries currently may be challenged, but Mr. White believes that he can build and improve upon the innovations that he has developed over the years to help overcome these challenges and bring the Southern California commercial fishing industry back to levels of success that have eluded it for many years. He feels confident that he can support his family in this venture as well. And the fishing community also anxiously awaits his return. *See, e.g.,*

Exhibit C (letters in support from fellow fishermen, Rene Monteagudo, Andrew Hemstreet, Tracy Hemstreet & Ryder Devoe). In sum, while Mr. White knows he could be successful in the air as a fish-spotter or on the sea as a boat captain, he is committed to innovating solutions in his workshop, remaining grounded at home, close to family and constantly reminded every day of what he loves and doesn't want to lose again.

## ADDTIONAL SENTENCING CONSIDERATIONS AND REQUESTED SENTENCE

The nearly four months (118 days) that Mr. White has served in custody for this offense is sufficient punishment in this case. Such a time-served sentence represents a punishment well above the mid-range of Mr. White's guidelines. And along with the travel restrictions, no-fly conditions and search requirements that he and the government have agreed to as conditions of supervised release, should the Court impose it, *see* DE 21 at 2-3, there will be adequate supervision, restrictions and incentives in place to ensure that Mr. White returns to a productive, law-abiding path, surrounded by the support of his family and larger community.

### I.   Guidelines Calculations

Mr. White agrees with the government's guideline calculations as set forth in the plea agreement. DE 21 at 10:

| Base Offense Level: | 6 | U.S.S.G. § 2B1.1(a))(2) |
| ➢ $15,000 Loss: | +4 | U.S.S.G. § 2B1.1(b) |

With his timely plea, Mr. White also qualifies for a two-level reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a). And with no prior criminal history or convictions, Mr. White has zero criminal history points, resulting in a Criminal History Category of I, which also qualifies him for a two-level reduction for being a zero-point offender. *See* U.S.S.G. § 4C1.1(a).

Mr. White's resulting guideline range is as follows:

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. § 2B1.1(a))(2) |
| ➢ $15,000 Loss: | +4 | U.S.S.G. § 2B1.1(b) |
| Acceptance of Responsibility: | -2 | U.S.S.G. § 3E1.1(a) |
| Zero-Point Offender: | -2 | U.S.S.G. § 4C1.1(a) |
| Adjusted Offense Level: | 6 | @ CHC I = 0 to 6 months |

## II. Relevant 3553(a) Factors

### a. Mr. White's History and Characteristics--§3553(a)(1)

No one disputes that Mr. White led a productive, hard-working life until he first landed on San Clemente Island. And despite his transgressions, Mr. White remains loved by his family and respected in his community. He is bright, innovative and, when focused on problems, determined to find solutions. At the same time, Mr. White acknowledges that his passions and frustrations got the best of him, clouding his judgment. He agrees that he became destabilized and demoralized to the point that he jeopardized his freedom and his actual ability to solve problems by engaging in the conduct that led to this offense. But there is no doubt that when focused, Mr. White has the ability to return to the positive life he was living prior to his turn for the worse. With supervision, Mr. White can prove that he is worthy of release.

### a. Nature and Circumstances of the Offense and its seriousness--§3553(a)(1) and (a)(2)(A)

Taking government property without permission, even an unlocked pickup truck with the keys in the cab, is a serious offense; it's a felony. And even though Mr. White's illegal entry into a Naval installation is only a misdemeanor, he appreciates the sensitivity with which the Navy treats all of its locations, including the Shore Bombardment Area (SHOBA) where Mr. White ventured. He certainly put himself at risk and disrupted whatever military activities may have been going on at the time.

However, it is also clear that Mr. White did not come to the island with nefarious intentions of terrorizing the base or destroying sensitive equipment. Indeed, he not only has accepted responsibility for his actions and their unlawfulness in pleading guilty to these offenses, Mr. White expressed remorse as soon as he was apprehended, apologizing the arresting officers for his actions.

### b. The need for adequate deterrence and protecting the public from further crimes by the defendant--§3553(a)(2)(B) & (C)

Mr. White ironically jeopardized his best chance to help his ailing industry recover by engaging in this conduct. For the last four months, Mr. White has had the time to appreciate that every day he spends locked away in custody is a day he cannot get back to work doing what he loves. Perhaps more poignantly, Mr. White has spent this time separated from his wife and young son, the very people for whom he works so hard to support.  It is also important to note that during his time in custody, Mr. White has had an adequate opportunity to reset and refresh his own mental health and well-being. Even with a time-served sentence, this first-time offender will return home with a heightened sense of his priorities and the consequences that come from violating the law.

In sum, additional time in custody is not necessary to deter Mr. White, and the conditions of supervised release agreed to by the parties, along with enhanced consequences of violating them, will sufficiently protect the public from any further criminal activity on Mr. White's behalf.

### c. Sentencing disparity--§3553(a)(6)

The need to avoid unwarranted sentencing disparities arises in all cases, and here, where a time-served sentence represents more than a mid-range sentence, there is no unwarranted disparity that might arise from the recommended sentence.

## CONCLUSION

Whatever sentence this Court chooses to impose, Mr. White's life has been indelibly impacted by this experience. He has lost valuable time with his family, as well as valuable time to productively address the challenges in his chosen livelihood. Moreover, Mr. White has realized that he will have to work hard to maintain the trust of the Court upon his release and the respect of his peers in the community.

Mr. White respectfully requests that the Court impose no more than a time-served sentence here so that he can, upon release, prove his value to his family, community and industry.

Respectfully submitted:

Dated: September 12, 2025

/s/ Ellis M. Johnston III
Attorney for Mr. White
trip@cjtrlaw.com

/s/ Domenic J. Lombardo
Attorney for Mr. White
djl@attorneylombardo.com